UNITED STATES DISTRICT COURT EASTERN DISTRICT OF WISCONSIN
FILED

'08 NOV 10 P1 :59

JON W. SANFILIPPO
CLERK

UNITED STATES OF AMERICA,

    Plaintiff,

v.    Case No. 08-CR-224

KYLE DeWOLF,

    Defendant.

## PLEA AGREEMENT

1. The United States of America, by its attorneys, Steven M. Biskupic, United States Attorney for the Eastern District of Wisconsin, and Mel S. Johnson, Assistant United States Attorney, and the defendant, Kyle DeWolf, individually and by attorney Nancy Joseph, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, enter into the following plea agreement:

### CHARGES

2. The defendant has been charged in three counts of a three-count indictment, which alleges violations of Title 18, United States Code, Sections 2422(b), 2423(a), and 2423(b).

3. The defendant has read and fully understands the charges contained in the indictment. He fully understands the nature and elements of the crimes with which he has been charged, and those charges and the terms and conditions of the plea agreement have been fully explained to him by his attorney.

4. The defendant voluntarily agrees to plead guilty to the following count set forth in full as follows:

## COUNT TWO

### THE GRAND JURY FURTHER CHARGES:

*On or about June 25, 2008, in the State and Eastern District of Wisconsin and elsewhere,*

### KYLE DeWOLF

*traveled in interstate commerce for the purpose of engaging in illicit sexual conduct with another person, in the form of a sexual act or acts which would be in violation of Chapter 109A of Title 18 of the United States Code if the act or acts occurred in the special maritime or territorial jurisdiction of the United States.*

*All in violation of Title 18, United States Code, Section 2423(b).*

5. The defendant acknowledges, understands, and agrees that he is, in fact, guilty of the offense described in paragraph 4. The parties acknowledge and understand that if this case were to proceed to trial, the government would be able to prove the following facts beyond a reasonable doubt. The defendant admits that these facts are true and correct and establish his guilt beyond a reasonable doubt:

R.G. (DOB: 6/12/94) just graduated from eighth grade and lives in Kenosha County, Wisconsin, with her mother and step-father.

Kyle DeWolf (DOB: 2/1/85) is a young man from Binghamton, New York. He recently completed four years in the army, including two tours in Iraq. He was honorably discharged on June 17, 2008 from Fort Stewart, Georgia.

Both of them confirmed that in December, 2007 they met, at least electronically, through a social networking website. Mr. DeWolf was still in Iraq at the time. The FBI and the Kenosha County Sheriff's Department have obtained a large volume of cellphone records, text message records, and e-mail records which revealed that R.G. and DeWolf kept in touch over the months.

In late April of 2008, as the end of Mr. DeWolf's army career approached, their rate of communication accelerated. E-mails between them became more serious through May. Various e-mails between them professed love for each other. One e-mail discussed the possibility of DeWolf

2

coming to see R.G. in Wisconsin. Their e-mails discussed a mutual desire to have sexual relations. A message between them dated May 30, 2008 acknowledged that R.G. had four more years before she would be out of high school.

There was a great deal of cellphone traffic between cellphones used by DeWolf and R.G., both of which were subscribed to from Sprint. The cellphone records reflect hundreds of calls between them during June. Of course, the records do not reveal the content of their conversations.

However, they also regularly exchanged text messages throughout June and the government has obtained a record of their texts between June 18 and 30, including the text of the messages themselves. There were many text messages between them every day in that period. They would often send a series of messages back and forth within a period of minutes. Many of these messages professed love for each other. There were various suggestions of marriage. A number of messages explicitly discussed their mutual desire to have sex with each other. On June 20, they texted about DeWolf using his webcam to allow R.G. to watch him "jerk off." That apparently was done as the FBI has recovered photographs from R.G.'s home of DeWolf masturbating and ejaculating. R.G. recalls receiving those photographs from DeWolf and also stated that she e-mailed pictures of herself naked to DeWolf.

Through June 25, they had never met in person but that day Mr. DeWolf surprised R.G. by telling her he was in Chicago and intended to come to see her the next day. DeWolf stated that, after his discharge from the army, he had traveled around and seen various family members or friends in New York and Pennsylvania. DeWolf and R.G. agreed that DeWolf would pick her up the next morning at her bus stop. She was taking summer school classes to fulfill certain ninth grade requirements in anticipation of entering high school.

Both stated that DeWolf did pick her up on June 26. Mr. DeWolf stated that he picked her up and they hung out. They stopped at his motel room. Then he dropped R.G. off at her school. After school, he spent more time with R.G. and they got something to eat.

R.G. was more specific about their activities that day. Mr. DeWolf picked her up at the bus stop and they went to a motel where she performed oral sex on him and they had intercourse with a condom. She states that this was her first act of intercourse. Then DeWolf took her to school.

The next day, they both state that R.G. was home alone and Mr. DeWolf came to her house. DeWolf admits visiting her at her residence. R.G. was again more specific. She stated that she performed oral sex on him and they again had intercourse with a condom. Her mother called saying she would be home early so DeWolf quickly left.

On June 28 and June 29, R.G. had family commitments and she and DeWolf did not see each other. However, they exchanged various text messages. Again, these messages professed love and spoke of possible marriage. However, now, instead of referring to wanting to have sex with each other, their messages explicitly referred to the sexual relations they already had.

3

That was corroborated by different text messages Mr. DeWolf was sending to an apparent friend. DeWolf bragged about all of his sex with an extremely energetic hot young female. He wrote that she enjoyed sex for its own sake and he did not even have to buy her any drinks. He referred to oral sex and attempts at anal sex.

DeWolf's messages to his friend clearly indicated that he knew R.G. was under age and that this sex was illegal. He said she was a young lady "too young for me to tell." Referring to the army, DeWolf wrote, "I've been out two weeks and I already committed a felony offense." On June 30, he wrote, "I've become a career criminal."

That day, R.G. was scheduled to return to summer school. Mr. DeWolf said he would come to pick her up at her bus stop and both admit that he did. DeWolf states that he picked her up and they agreed that she would drive back east with him. R.G. stated that DeWolf picked her up at the bus stop and they went to a motel where they had intercourse with a condom. She asked him to take her back east and he agreed. Later that day, the school reported to R.G.'s mother that she had never attended. R.G. was reported missing and the search for her ensued, led by the Kenosha County Sheriff's Department then the FBI.

According to R.G. and DeWolf, they drove east through Pennsylvania toward New York. This was corroborated by a man in rural Pennsylvania who came home at night and found them parked in his driveway. Both stated that they slept overnight in Pennsylvania in DeWolf's car. R.G. adds that they had intercourse with a condom in the car and she also performed oral sex on DeWolf in Pennsylvania.

The next day, July 1, they drove on and arrived in Binghamton. They both stated that they checked into an Econolodge. R.G. adds that they proceeded to have sexual activity which included oral sex and intercourse with a condom.

The next day, they went to see DeWolf's mother and step-father. They state that Mr. DeWolf's mother took them out to a camp ground and helped them rent a cabin. R.G. stated that she was upset that night about running away from home so rejected overtures of intercourse but did perform oral sex on DeWolf.

R.G. stated that she had informed DeWolf of her age and he bought her a necklace as a present for her 14th birthday. They both agree that they talked of living together indefinitely in Binghamton.

However, an arrest warrant had been issued in this district and they were found by the authorities on July 4. DeWolf made the various admissions summarized above and admitted spending all of this time with R.G. but when asked about sexual activity, he stated that he wanted to talk with a lawyer and the interview terminated.

R.G.'s satchel contained a note from Mr. DeWolf. It stated:

4

I will love you forever. These were the best days of my life. Just don't ever forget about me and come find me when you're older. Love, Kyle.

The defendant's car was searched with a warrant. Among other things, it contained a necklace, a digital camera, a laptop with thumb drives, handcuffs with keys, condoms, and a purple sex toy.

This information is provided for the purpose of setting forth a factual basis for the plea of guilty. It is not a full recitation of the defendant's knowledge of, or participation in, this offense.

## PENALTIES

6.  The parties understand and agree that the offense to which the defendant will enter a plea of guilty carries the following maximum term of imprisonment and fine: 30 years and $250,000. Count Two also carries a mandatory special assessment of $100.00, and a maximum of five years of supervised release.

7.  The defendant understands that his conviction of the offense in Count Two subjects him to registration requirements under the Sex Offender Registration and Notification Act, found at 42 U.S.C. § 16901, et seq. The defendant understands that, as a condition of supervised release, he will be required to register as a sex offender pursuant to Sentencing Guideline Section 5D1.3(a)(7). The defendant also understands that failing to comply with sex offender registration requirements may subject him to criminal prosecution under 18 U.S.C. § 2250.

8.  The defendant acknowledges, understands, and agrees that he has discussed the relevant statutes as well as the applicable sentencing guidelines with his attorney.

## DISMISSAL OF REMAINING COUNTS

9.  The government agrees to move to dismiss the remaining counts of the indictment at the time of sentencing.

## ELEMENTS

10. The parties understand and agree that in order to sustain the charge of travel in interstate commerce for the purpose of engaging in illicit sexual activity as set forth in Count Two, the government must prove each of the following propositions beyond a reasonable doubt:

> First, the defendant traveled in interstate commerce; and
> Second, it was for the purpose of engaging in illicit sexual conduct with another person. (Illicit sexual conduct is defined as any sexual act with a person under 18 years of age that would be in violation of Chapter 109A if the act occurred in the special maritime or territorial jurisdiction of the United States. Chapter 109A includes prohibitions of sexual activity with persons under the age of 16.)

## SENTENCING PROVISIONS

11. The parties agree to waive the time limits in Fed. R. Crim. P. 32 relating to the presentence report, including that the presentence report be disclosed not less than 35 days before the sentencing hearing, in favor of a schedule for disclosure, and the filing of any objections, to be established by the court at the change of plea hearing.

12. The parties acknowledge, understand, and agree that any sentence imposed by the court will be pursuant to the Sentencing Reform Act, and that the court will give due regard to the Sentencing Guidelines when sentencing the defendant.

13. The parties acknowledge and agree that they have discussed all of the sentencing guidelines provisions which they believe to be applicable to the offense set forth in paragraph 4. The

defendant acknowledges and agrees that his attorney in turn has discussed the applicable sentencing guidelines provisions with him to the defendant's satisfaction.

14. The parties acknowledge and understand that prior to sentencing the United States Probation Office will conduct its own investigation of the defendant's criminal history. The parties further acknowledge and understand that, at the time the defendant enters a guilty plea, the parties may not have full and complete information regarding the defendant's criminal history. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentencing court's determination of the defendant's criminal history.

## Sentencing Guidelines Calculations

15. The parties acknowledge, understand, and agree that the sentencing guidelines calculations included in this agreement represent the positions of the parties on the appropriate sentence range under the sentencing guidelines. The defendant acknowledges and understands that the sentencing guidelines recommendations contained in this agreement do not create any right to be sentenced within any particular sentence range, and that the court may impose a reasonable sentence above or below the guideline range. The parties further understand and agree that if the defendant has provided false, incomplete, or inaccurate information that affects the calculations, the government is not bound to make the recommendations contained in this agreement.

## Relevant Conduct

16. The parties acknowledge, understand, and agree that pursuant to Sentencing Guidelines Manual § 1B1.3, the sentencing judge may consider relevant conduct in calculating the sentencing guidelines range, even if the relevant conduct is not the subject of the offense to which the defendant is pleading guilty.

7

### Base Offense Level

17. The parties agree to recommend to the sentencing court that the applicable base offense level for the offense charged in Count Two is 24 under Sentencing Guidelines Manual § 2G1.3(a)(4).

### Specific Offense Characteristics

18. The parties agree to recommend to the sentencing court that a two-level increase for influencing a minor to engage in prohibited sexual conduct under Sentencing Guidelines Manual §2G1.3(b)(3) is applicable to the offense level for the offense charged in Count Two.

19. The parties agree to recommend to the sentencing court that a two-level increase for use of a computer to facilitate the crime under Sentencing Guidelines Manual § 2G1.3(b)(3) is applicable to the offense level for the offense charged in Count Two.

### Acceptance of Responsibility

20. The government agrees to recommend a two-level decrease for acceptance of responsibility as authorized by Sentencing Guidelines Manual § 3E1.1(a), but only if the defendant exhibits conduct consistent with the acceptance of responsibility. In addition, if the court determines at the time of sentencing that the defendant is entitled to the two-level reduction under § 3E1.1(a), the government agrees to make a motion recommending an additional one-level decrease as authorized by Sentencing Guidelines Manual § 3E1.1(b) because the defendant timely notified authorities of his intention to enter a plea of guilty.

## Sentencing Recommendations

21. Both parties reserve the right to provide the district court and the probation office with any and all information which might be pertinent to the sentencing process, including but not limited to any and all conduct related to the offense as well as any and all matters which might constitute aggravating or mitigating sentencing factors.

22. Both parties reserve the right to make any recommendation regarding any other matters not specifically addressed by this agreement.

23. The parties agree to jointly recommend a sentence of 90 months incarceration upon defendant's conviction under Count Two.

## Court's Determinations at Sentencing

24. The parties acknowledge, understand, and agree that neither the sentencing court nor the United States Probation Office is a party to or bound by this agreement. The United States Probation Office will make its own recommendations to the sentencing court. The sentencing court will make its own determinations regarding any and all issues relating to the imposition of sentence and may impose any sentence authorized by law up to the maximum penalties set forth in paragraph 6 above. The parties further understand that the sentencing court will be guided by the sentencing guidelines but will not be bound by the sentencing guidelines and may impose a reasonable sentence above or below the calculated guideline range.

25. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentence imposed by the court.

## FINANCIAL MATTERS

26. The defendant agrees not to request any delay or stay in payment of any and all financial obligations imposed by the sentencing court.

27. The defendant agrees that, during the period of any supervision (probation or supervised release) imposed by the court in this case, as long as financial obligations imposed by this Court remain unpaid, the defendant will provide the Financial Litigation Unit (FLU) of the United States Attorney's Office with completed financial forms which will be provided by FLU, and will provide any documentation required by those forms. The defendant will provide FLU with such completed financial forms with required documentation within the first two months of supervision, at six month intervals thereafter during supervision, and within the last six months of scheduled supervision.

### Special Assessment

28. The defendant agrees to pay the special assessment in the amount of $100 prior to or at the time of sentencing.

## DEFENDANT'S WAIVER OF RIGHTS

29. In entering this agreement, the defendant acknowledges and understands that in so doing he surrenders any claims he may have raised in any pretrial motion, as well as certain rights which include the following:

> a. If the defendant persisted in a plea of not guilty to the charges against him, he would be entitled to a speedy and public trial by a court or jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government and the judge all must agree that the trial be conducted by the judge without a jury.

10

b. If the trial is a jury trial, the jury would be composed of twelve citizens selected at random. The defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges. The jury would have to agree unanimously before it could return a verdict of guilty. The court would instruct the jury that the defendant is presumed innocent until such time, if ever, as the government establishes guilt by competent evidence to the satisfaction of the jury beyond a reasonable doubt.

c. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all of the evidence, whether or not he was persuaded of defendant's guilt beyond a reasonable doubt.

d. At such trial, whether by a judge or a jury, the government would be required to present witnesses and other evidence against the defendant. The defendant would be able to confront witnesses upon whose testimony the government is relying to obtain a conviction and he would have the right to cross-examine those witnesses. In turn the defendant could, but is not obligated to, present witnesses and other evidence on his own behalf. The defendant would be entitled to compulsory process to call witnesses.

e. At such trial, defendant would have a privilege against self-incrimination so that he could decline to testify and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify on his own behalf.

30. The defendant acknowledges and understands that by pleading guilty he is waiving all the rights set forth above. The defendant further acknowledges the fact that his attorney has explained these rights to him and the consequences of his waiver of these rights. The defendant further acknowledges that as a part of the guilty plea hearing, the court may question the defendant under oath, on the record, and in the presence of counsel about the offense to which the defendant intends to plead guilty. The defendant further understands that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement.

31. The defendant acknowledges and understands that he will be adjudicated guilty of the offense to which he will plead guilty and thereby may be deprived of certain rights, including but not limited to the right to vote, to hold public office, to serve on a jury, to possess firearms, and to be employed by a federally insured financial institution.

32. The defendant knowingly and voluntarily waives any claim or objection he may have based on the Speedy Trial Act.

### Further Civil or Administrative Action

33. The defendant acknowledges, understands, and agrees that the defendant has discussed with his attorney and understands that nothing contained in this agreement is meant to limit the rights and authority of the United States of America or any other state or local government to take further civil, administrative, or regulatory action against the defendant, including but not limited to any listing and debarment proceedings to restrict rights and opportunities of the defendant to contract with or receive assistance, loans, and benefits from United States government agencies.

### GENERAL MATTERS

34. The parties acknowledge, understand, and agree that this agreement does not require the government to take, or not to take, any particular position in any post-conviction motion or appeal.

35. The parties acknowledge, understand, and agree that this plea agreement will be filed and become part of the public record in this case.

36. The parties acknowledge, understand, and agree that the United States Attorney's office is free to notify any local, state, or federal agency of the defendant's conviction.

37. The defendant understands that pursuant to the Victim and Witness Protection Act, the Justice for All Act, and regulations promulgated thereto by the Attorney General of the United States, the victim of a crime may make a statement describing the impact of the offense on the victim and further may make a recommendation regarding the sentence to be imposed. The defendant acknowledges and understands that comments and recommendations by a victim may be different from those of the parties to this agreement.

## EFFECT OF DEFENDANT'S BREACH OF PLEA AGREEMENT

38. The defendant acknowledges and understands if he violates any term of this agreement at any time, engages in any further criminal activity prior to sentencing, or fails to appear for sentencing, this agreement shall become null and void at the discretion of the government. The defendant further acknowledges and understands that the government's agreement to dismiss any charge is conditional upon final resolution of this matter. If this plea agreement is revoked or if the defendant's conviction ultimately is overturned, then the government retains the right to reinstate any and all dismissed charges and to file any and all charges which were not filed because of this agreement. The defendant hereby knowingly and voluntarily waives any defense based on the applicable statute of limitations for any charges filed against the defendant as a result of his breach of this agreement. The defendant understands, however, that the government may elect to proceed with the guilty plea and sentencing. If the defendant and his attorney have signed a proffer letter in connection with this case, then the defendant further acknowledges and understands that he continues to be subject to the terms of the proffer letter.

## VOLUNTARINESS OF DEFENDANT'S PLEA

39.  The defendant acknowledges, understands, and agrees that he will plead guilty freely and voluntarily because he is in fact guilty. The defendant further acknowledges and agrees that no threats, promises, representations, or other inducements have been made, nor agreements reached, other than those set forth in this agreement, to induce the defendant to plead guilty.

## ACKNOWLEDGMENTS

I am the defendant. I am entering into this plea agreement freely and voluntarily. I am not now on or under the influence of any drug, medication, alcohol, or other intoxicant or depressant, whether or not prescribed by a physician, which would impair my ability to understand the terms and conditions of this agreement. My attorney has reviewed every part of this agreement with me and has advised me of the implications of the sentencing guidelines. I have discussed all aspects of this case with my attorney and I am satisfied that my attorney has provided effective assistance of counsel.

Date: 10 Nov 08

_____
KYLE DeWOLF
Defendant

I am the defendant's attorney. I carefully have reviewed every part of this agreement with the defendant. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

Date: Nov. 10, 2008

_____
NANCY JOSEPH
Attorney for Defendant

For the United States of America:

Date: 11/10/08

_____
STEVEN M. BISKUPIC
United States Attorney

Date: Nov. 10, 2008

_____
MEL S. JOHNSON
Assistant United States Attorney

15